Please call the next case. 080116, Peter v. Darren Hill. Now that the important insurance case is over, we'll get to the death case. The minor issue on the call for the day. Tell us who you are, who you represent, how much time you need. Good morning, my name is Sally Dilgart, D-I-L-G-A-R-T, and I represent the people of the state of Illinois. I'm sorry, could you repeat that? Sally Dilgart, D-I-L-G-A-R-T, on behalf of the plaintiff's affiliate, the people of the state of Illinois. Thank you. Good morning, your honors. My name is Stephen Becker, on behalf of Johnny Hill. Thank you. We know that 20 minutes saves some for rebuttal. Thank you. We pretty much know the facts. Don't argue those. Argue the facts as it applies to your issues. Thank you. Good morning, your honors. My name is Stephen Becker, on behalf of Johnny Hill. This case presents a question of first impression in Illinois regarding Illinois Supreme Court Rule 416C, involving the death penalty notice. Now, this court is going to hear two divergent interpretations of the rule. Mr. Hill contends that the plain language of subsection C is clear and unambiguous. Thus, if there is not good cause shown, the state is required to file the notice affirming or declining the death penalty. But under 416A, doesn't it say that basically you presume it's going to be a capital case unless? Well, the state's argument is that we need to construe this in paramateriae with subsection A. That, though, only comes into play where there's an ambiguity in subsection C. But even if their argument is correct, the presumption comes from the committee comments, which, again, we don't look at until there is an ambiguity. As far as the defendant goes, wasn't it always treated as a capital case? In the beginning, well, we don't know until they file the notice, because subsection ---- They never filed the notice until way afterwards. You mean before that it wasn't treated as a capital case? You didn't have the special team on it? Well, no, because the rule for the special team, which is 416D, was not in effect at the time of the offense in this case. That didn't come into play later on. So eventually there were capital attorneys that were appointed, but at the initial part of the case, that rule was not actually in effect. And I guess to follow up more on your question about subsection A, even if we get to that point, subsection A says that the procedures adopted shall be applicable in all cases wherein capital punishment may be imposed unless the State has given notice of its intention not to seek the death penalty. Now, the question you're asking is, does that create a capital presumption that's open-ended? No, it doesn't. The time at which the State is to decline the death penalty is 120 days unless good cause is shown. Otherwise, this would allow the State, if we read it according to their interpretation, to wait until right before trial to decline the death penalty, which would... Well, why can't they do that? That's the goal of every defense lawyer on earth is to avoid the death penalty, right? You know that, Mr. Becker, you've read. So if the State were to say during opening arguments, you know what, I'm not going to have to kill this guy. That's usually a good thing on the part of the defendant. They usually make them kind of happy. So they can always decline. I suggest that, you know, that's odd. That's not in the briefs. They can always decline. Always. How are they hurt by it? I won't kill your client. Yay! It's not a I won't kill your client. Oh, no, darn. You know, no, they can always decline. No, that's always nice if they decline, but the Supreme Court has set forth in subsection C that they are supposed to make that decision within 120 days. Right, for reasons generally of a judicial economy and not to torture the poor guy. Precisely. To me, more importantly, to torture the poor defense counsels who are very concerned about these cases. Precisely. There's very important reasons to tell the State to do it up front. Right. They can always do it. They can. It's good news. Yeah, but the notice here is to let them either affirm or decline within the 120-day time period in order for those very policy purposes that you mentioned. If we can. Again, not in the briefs mentioned, but this is kind of a new case. DelVillar. Part of it was Robinson. I was on Robinson in the appellate court. Yes. Because my division in DelVillar made the wrong decision and it was reversed by the Supremes in DelVillar. And, again, I know both of you parties are familiar with those cases. Right. If you could explain, Mr. Becker, first, how you think it is, if we apply DelVillar, which I think we have to do in terms of whether it's mandatory, directory, or discretion. Yes. I think it's mandatory under DelVillar. Why is that not so? I think it is mandatory because under Robinson there are two, and Ousley, there are two exceptions to the provision that, in other words, where you have a statute or a rule that does not state a consequence, as this one does, and as most Supreme Court rules do not have a consequence that we deal with in criminal cases, there are two exceptions to that to make it mandatory where otherwise it might be directory. Those are, number one, that it protects important rights of a particular citizen. Here I would suggest this protects the most important right, their potential right not to be executed. The second exception to the mandatory directory dichotomy is that there is specific negative language in the provision that is connected to a temporal limitation. This is exactly what we have in subsection C where the rule states, in no event shall the filing of the notice be later than 120 days after arraignment. So I would suggest that both of the exceptions apply in this case, thus making it mandatory as opposed to directory. Okay. Well, let's go to Part 2 then, though. Yes. As you mentioned in the beginning, Rule 416D was not in existence at the time of the charging. Yes. Was it in existence at the time of the filing of the notice that they could seek death? If you know. Let me see here. Have you had 416? Yes, it was. No, it was. I would say no, it was. The rule was in effect, but if you read the marginalia following Rule 416, it states that the provisions of Paragraph D, which require membership in the capital litigation bar, shall be effective one year after the adoption of this rule and shall apply in cases filed by information or indictment on or after said effective date. But that's only as to the counsel, because the hard part was to train counsel. They needed a year gap to try and train defense counsel. That's correct. But as to the notifications, was the notification part of this, of 416D, in existence at the time he was arraigned? The notification, no, it was not at the time he was arraigned. As to dates, if you know, at the time the state filed their intent, you know, the 257 days. Yes. Was it in existence then? Yes, Subsection D was effective on that date. If you know, about how many days did it last from the time 416D became, that part of it, the notification part, had become effective to the time the state finally got around to doing their job? About six months, Your Honor. Okay. Well, since they filed, though, in, oh, you're right. Okay. That's great. So, as I stated, I think the state's general idea of the capital presumption that's open-ended is not worn out by the plain language. The imperimateriate doctrine is not applicable because the language in Subsection C is clear and unambiguous. Also, we discussed a little bit about the remedy provision, the state's argument that because there is not a remedial provision, there is no consequences, and I think they've discussed that pretty generally with Justice Quinn. Therefore, I will just move on to the idea of the procedural bars which the state has alleged. First of all, the state has argued that the case is moot because the defendant did not receive the death penalty here. Our argument is there is no mootness because we have a ripe sentencing issue, namely that here because the notice was not stricken and the judge believed Judge Ford was assigned later to this case. When did he get in? When did Ford get involved as a post-reporter? Justice Ford did not get involved until October of 2006. Was it right before trial then? Would that be right? Within less than a year before trial. Okay. Yes. And so he was under the impression when he was imposing sentence that the death penalty, of course, was on the table and the defendant was eligible. He found that the defendant should not have the death penalty imposed upon him. He also found – That's where the defendant weighed, right? So Ford couldn't have gotten involved, it's what he thought, until the defense attorney with defendant's consultation decided they were going to ask the judge to decide both eligibility and sentencing. That is correct. Yes. Is there any presumption that we can give to the trial judge that he knew the sentencing prerogatives and knew the maximums and minimums, knew all about the sentencing in this case? Yes. Just for the imposing of sentence at the time of sentence, he clearly mentioned the defendant was death eligible. Then he also said, I'm not going to impose natural life, but I am going to impose the 60-year sentence. And so that was what was in his mind. Did he realize at that time he could impose less than 60 years? He could have. That's correct. But our point here is the case law is quite clear that where a judge has a misapprehension of the sentencing range, the maximum sentencing range, even if he imposes a sentence I'm sorry. Maybe I didn't read enough. What was his – how do you come to that conclusion that he didn't know the sentencing? I said he – no, he did know the sentencing. I was saying he's under a misapprehension because if the death penalty was not on the table, then he would have had a lower ceiling. In other words – Can't we presume that he knows the law and consider that? Can we? I don't know. But he was under the apprehension that the death penalty was a legitimate sentence. And our argument is it was not. Right. That's exactly right. Your argument is that he could not – the State could not have continued to seek death after maybe not 120 days, but certainly not after 257 days. There weren't a lot. It wasn't on the table. Correct. It should not have been on the table. And that's why it's not moved, and that's why you're – Correct. So that is our position in a nutshell. The State has also argued the equitable doctrine of latches. I won't spend too much time on that other than to say that, of course, because it is an equitable doctrine, the party asserting the equity cannot come in with unclean hands, and our argument would be because the State violated the notice provision, admitted to doing so, and gave no good cause, they cannot assert an equitable defense. In addition, based on their argument that there is a capital presumption, they would not have changed their conduct anyway, so it cannot demonstrate prejudice. Lastly, they raise a cursory argument on forfeiture. The problem is the factual basis for this is not borne out by the record. They claim on page 4 of their brief that the parties were litigating numerous death penalty motions between the period that they filed the notice in September of 2002 and July of 2006. There, however, was only one motion, death penalty motion that was filed during that time period, and they failed to point out that that was withdrawn by the defense at the next status hearing. All the motions pertaining to the death penalty did not arise in the case until July of 2006. So there's no basis whatsoever for a forfeiture argument. I would suggest that no court would accept a forfeiture argument on a death case. You would hope? Yes. And this does come up, of course, on successive post-convictions because something has to end at some point. Right. But certainly not a direct appeal. So if the panel has no further questions, I would ask that you vacate. If I may ask you, but your major argument, though, as to prejudice is that while he did get more rights, as the state points out, he had more lawyers, he had better mitigation specialists, the idea of being at the end of the day when he gets sentenced, when Judge Ford sends him to 60 years, Ford would do that just the mindset being, and I think correctly so how this works, would be that, well, I didn't give him death. I'll give him the maximum non-extent. So the choices at that point, once Judge Ford says he's not eligible, would be natural life. Well, correct. 20 to 60 or natural life. Correct. And since he knows those would be the only two options available to him, he chose the highest non-extended term because it was a death case on that state. Yes. And so rather than give life, he chose to give 60. And had that life been, had he not had the possibility of death, had Nick Ford, Judge Ford decided not to give death, he was more likely to give him somewhere less than 60 years. Correct? Precisely. Okay. That makes sense. Thank you. Thank you very much. Good morning. May it please the Court. In his reply brief, defendant accuses the state of ignoring its duty to file a notice of intent, says that we've read it out of the rule altogether, but I submit to you that's incorrect. The state has always acknowledged that it must file a written notice of intent within 120 days of arraignment. But that's not the precise issue before the Court today. What's an issue now is the proper remedy when, as here, the state, through inadvertence, has filed its notice but filed its notice late. Rule 416 doesn't specify. But it's an inadvertent. I mean, it's, I know, having done it for a long time, Ms. Plowgard, and, again, when you read these things, you're probably in a hurry. Or put it in the grand jury. Certainly the trial assays know what they're going to do and what's an appropriate death case or not. And the rules being the rules, if it's appropriate for death, you should ask for death and then wait for the supervisors to convene the high tribunals to decide if they agree with it. So I don't know. Why would it take 257 days to figure that out? Eight and a half months from the time, you know, he takes his girlfriend and flings her from a ninth-floor window. I mean, that's pretty egregious. Well, in order of protection, it's in existence. I have no reason to conclude that it was anything other than inadvertence. The defendant certainly hasn't indicated it was anything other. Right. In addition to that, though. I'm saying it's not purposeful. I'm just saying. There's an important point, Judge, that I'm not sure comes through in the parties' briefs really clearly. And that is the state's notice was due in April of 2002. It was filed in September of that year. But the month before, in August of 2002, the state's attorney said, I'm seeking the death penalty in this case and I will be filing my formal notice. So, again, I think it's just a matter of inadvertence. Nothing more. I don't mean to ascribe bad motives. I'm just saying I don't want to say that nothing could be simpler because certainly battery cases are simpler. But in terms of deciding whether or not somebody is worthy of being executed. I certainly wish it had been filed on time, Judge. I would be more comfortable standing here before you today. It's not that complicated. It's not. Go ahead. The rule doesn't specify a remedy, but I submit to you because that's because there's little to no possibility that the defendant would be prejudiced by a late filing. In preparing for this argument, I really developed an appreciation for what the Special Committee on Capital Cases did when they wrote this rule because they wrote the rule in such a manner as to create a presumption that a potential capital case would be treated as an actual capital case until or unless the state filed and declined to seek the death penalty. We don't need to look to the committee comments to know about this presumption because it's clear from the language of the rule itself. There are three provisions of the rule, which I think my opponent has overlooked or underestimated. The first is Subdivision A, and it could not be clearer. It plainly states that the special procedures for capital cases shall be applicable in all cases wherein capital punishment may be imposed unless the state has filed and declined to seek death. Those are the exact words of Subdivision A. So in other words, the capital rules apply unless the state formally declines the death penalty. The plain language of the rule itself is creating the presumption. Section D says much the same thing. The judge must appoint two members of the capital trial bar even if the state has failed to provide any notice. So Section D specifically addresses a situation like we have here where the state has failed to comply with the notice requirement, but Section D says that the defendant still receives the benefits of the capital rules. And finally, Section C, the notice requirement itself requires the state to file its notice of intent to seek or decline. And I think the addition of those words are important because, again, a potential capital case is treated as an actual capital case unless the state actually declines. Defendant argues that we have to apply the clear and unambiguous of the rules as it's written, and we agree with him. The rule is clear. But defendant is asking us to ignore three provisions of the rule, subdivisions A, C, and D. And we can't do that. We can't give them no effect whatsoever. We have to read the rule as a whole and consider each part in connection with the rest. I think it's also important to note that the state's late notice in this case did not surprise the defendant. Even though in his reply brief, defendant suggests that it did. In 2006, when the defendant moved to strike, defense counsel said he just recently received the state's notice. But that's not true. The state's notice is included in the common law record. It's on page C-50. And it's file stamped September of 2002. In addition, as I mentioned earlier, the state's attorney in open court announced his intention to seek the death penalty in August of 2002. So counsel didn't just receive the notice only recently in 2006. He received it four years before in 2002. And in that connection, I submit to you that the defendant can't show any resulting prejudice. The state's notice may have been late, but it was filed five years before the defendant's trial began in 2007. What do you say? He can't show prejudice, Ms. Dillgart. You mean he can't show prejudice that in terms of his ability to put the case, his defense case together, he was not harmed. Absolutely. You don't mean that he was, I mean, you'll address, I imagine, in a few minutes, the idea of whether or not he's prejudiced at the time of sentencing. Absolutely. He's never even alleged that his preparation for trial and sentencing was in any way impeded because he himself treated it as a capital case. Defense counsel themselves treated it as a capital case. Before they filed their motion to strike, defense counsel filed 12 death penalty motions, participated in case management conferences. They reaped all the benefits of having this case treated as a capital case, most notably representation by two highly qualified attorneys and members of the capital litigation trial bar. Excuse me, Ms. Dillgart. When you say all the advantages of having the special capital litigation unit represent them, all the motions filed, doesn't that also sort of ignore what was referred to earlier by Justice Quinn and counsel about the mindset, the torture, the fact that you're believing that you have a death penalty case and you're fighting one all this time, and even though you may have all of the complements for fighting a death penalty case, then all of a sudden you find out, oh, I don't have one. On one hand, as Justice Quinn said, thank the Lord. On the other hand, you've been going through this whole process with something hanging over your head that you didn't need to have hanging over your head. Well, I think that the rule, again, was written in such a way as to encourage preparation for defense counsel for a death penalty hearing and to minimize any resulting prejudice. And without some showing of prejudice, some inability to prepare for a capital sentencing hearing, I think that the anticipation of having it hanging over your head would not be sufficient resulting prejudice to preclude the death penalty. And so you're distinguishing between anxiety and prejudice. Right. And I'm sure that the committee must have taken that into consideration because they could have written a rule that said if the state's notice is late, the state is precluded from seeking death, and they didn't do so. My opponent said that defense counsel in this case did not file any death penalty motions before the motion to strike. I will give you two as an example. They moved for depositions, which are permitted only under the capital rules, and they did so on December 1st of 2004. And they also filed a motion for discovery for additional evidence in aggravation, which, again, is allowed only in these capital cases. And they did so, again, on the 1st of December of 2004 before the motion to strike. But there were about 12 motions in all. Defendant asked this court to vacate his 60-year sentence and remand his case for resentencing under what he calls the appropriate statutory range. But this defendant received a non-enhanced sentence, and the non-enhanced penalty for murder is 20 to 60 years. So the defendant's already received a sentence, which by his own admission is appropriate. Defendant hasn't identified any error in the sentencing hearing itself, and there's no reason to vacate the sentence. In his reply brief, defendant finally states the basis of his argument and says, well, during the sentencing hearing, Judge Ford had decided not to give him the maximum but to give him the next to maximum, I think, are his terms, or the second maximum. Well, clearly that's not the case, because if that had been true then Judge Ford would have given him natural life. Judge Ford didn't have any thoughts of the sort, and there's no indication of that in the record. Well, it just makes common sense, though. And, again, if Nick Ford's good for one thing, it's sentencing. He understands it backwards forward, I'd suggest. If you read his stuff or if you know him, he understands sentencing very, very well. And just from the idea of what is the maximum sentence available was death, if not life, then what is the next? Well, it's 60 years in terms of seriousness. And so I would, as I say, for what it's worth, I agree with their argument that he could have given more years. He may have gotten less years had it not been a death case. If we were to find, except their argument, that the rule of 416 is preclusive of asking for a death if you don't meet the 120 days, as they argue in their brief, if we treat it like a speedy trial demand, then he might have a good argument. But the question is, should we treat this as a speedy trial demand? And I think the speedy trial analogy is enlightening, because this is rule 416 is very different from the speedy trial statute. First of all, it's a Supreme Court rule. It's not a statute. So it doesn't confer a substantive right. Only a statute or the Illinois federal constitutions could do so. It's a mandatory duty without question. And the court has broad discretion to fashion a remedy. But it's not a substantive right. And unlike the speedy trial statute, there's not a presumption written in that says we're going to presume that the defendant was tried within 120 days or within time. I asked the counselor at the beginning how he would analyze this case under Del Villar, which has been on for five months. And how would you analyze this case under Del Villar's mandatory directory or discretion? Or can you? I would say that this imposes a mandatory duty on the state. And, again, that when you have rules of – when you have the Illinois Supreme Court prescribe rules of procedure for the Illinois courts, they can fashion a broad remedy. But I would think that the remedy, you know, usually would be something along the lines of saying, okay, state, you didn't file your notice within 120 days. It's now 130 or whatever. File your notice in Stanner. Or you filed a notice, but it didn't include the eligibility factor. So file a proper notice that indicates the 9-1-B factor. The court could order the state to comply with all the discovery rules. Of course, they should be doing so anyway. Grant a continuance to enable the defendant to prepare for trial or sentencing. But I don't think that this notice under the rule is a condition preceding to obtaining the death penalty. The condition is preceding. I think that's because under Del Villar, I think it's – I think it's directory under the language of Del Villar. And if you're not familiar with it, you're not familiar with it. I'm really not familiar with the case. You're better off saying that than conceding a major point where you're wrong. So in the future, just a suggestion, Ms. Kilgarwin, if somebody asks you a question about a case you don't know, say, I'm really not familiar. Yeah, I'm really not. Thank you. To get back to the vacating the 60-year sentence, I think that Judge Ford here stated on the record why he thought a 60-year sentence was warranted. He pointed specifically to the defendant's criminal history, a criminal history that included seven prior convictions, including two domestic batteries to a woman who was the murder victim in this case. There were six other domestic batteries which the victim never prosecuted, including an incident in which the defendant beat her in the head and about the body with an iron. The judge specifically called those incidents to mind. He also said he was horrified by the barbaric manner, and that's Judge Ford. You know he argued that he's a very bad man and he's well-deserved a 60 years. The question is, do we get to that? So don't tell us how horrible he is for throwing his girlfriend out of a nightclub window. He's horrible. That's not a problem. My point is that Judge Ford stated his reasons for imposing a 60-year sentence, and I don't think that the defendant's argument holds water. We've also submitted that the claim is moot because the issue involved a cease-to-exist. There's been an important intervening event. If we agree on any of these procedural issues, whether it's mootness, latches, forfeiture, and I tell you it's two latches and forfeiture on a death case, that's not going to fly. We'll be crucified appropriately so. Let's say we buy your mootness argument. That just means that this panel of this court has decided to let somebody else decide this case at a later date. This occurs constantly. I bet it occurs in the majority of the cases, at least in Cook County, if you ever take a look. I bet the great majority of the cases are decided, written notices put in forward after 120 days. That's how the office historically has always worked. Again, I'm not complaining. That's the way life works. It's always worked. It will not change. So if we bought it, all we're doing is saying, let the second, third, fourth, fifth districts decide how this is. Because clearly, the appellate court can only rule in this area if you didn't get death. So if we agree with that, then all we're saying is that this division says it's moot. Let the Supremes handle it. The argument will be raised eventually because eventually Cook County will get some people on death row where they didn't file on time. And the state appellate defender, whoever represents those particular fellows, will come up when he's – so he won't have a mootness issue because he'll be under a sentence of death. Or this case can go up and the Supreme Court can rule on it. But I suggest to you, as a tactical matter, as a practical matter, under the public interest exception, there's a lot of these cases out there. It's the first one I've seen. But there are a lot of them. I'm stunned it hasn't been ruled on already. But it hasn't. So why should we not apply the public interest exception? And you have an answer from this panel as to whether or not what is the effect of a failure of timely file. I notice to see that. Well, I think you just put your finger on it, Judge, when you said this is the first one you've seen. The rules were enacted in 2001. We're in 2010, and this is a case of first impression. The public interest exception looks to see if the situation is likely to occur, if there's a lot of litigation going on. This is a case of first impression. I have no reason to believe it's going to happen again. Okay. I wish you were right. I hope it doesn't happen again. I'm sure it happens every week, but that's just me. Anything else? The defendant also claims that his – argues that his claim is now moot because he was eligible for a natural life back in 2000 and sentenced before he was actually sentenced. But that's not the relevant date. The relevant date is now because the issue for mootness is whether or not the court can grant the relief requested. Under defendant's approach, no mootness doctrine ever applies because defendant could always challenge something that could have happened but did not, in fact, happen to him. The court can also refuse to consider the claim because it's barred by latches. Even though the state's notice was due in April of 2002 and wasn't filed until September of that year, defendant waited four years, waited until July of 2006 to call the judge's attention to the error. And I won't belabor the point, but, again, during that four-year period of time, defendant was represented by two members of the capital litigation bar and was filing motions designed to obtain the benefits of the capital rules. I think it's important, too, to remember that defendant is now challenging Judge Porter's decision to deny his motion to strike. So he has to show how that decision was an abuse of discretion. And I submit to you, if we look at the circumstances known to Judge Porter, when he made his ruling, Judge Porter had every right to deny defendant's motion, a motion made after the party has spent four years preparing the case as a capital case with all the time and expense that that entails. And, finally, defendant argues that the state cannot invoke equitable principles because the state doesn't have clean hands. But I think he's misinterpreted that doctrine. Defendant has provided the case himself. It's the Myers case and defendant's reply brief that states that the clean hands doctrine prevents a party from invoking equity only if the party, here the state, is itself guilty of conduct violating basic principles of equity, not mere failure to file on time. The state didn't get its notice in on time in this case, but it did not engage in equitable conduct. The argument is on a capital case for the defense failure to bring this up. And you cite civil cases. If we were to go down that road and then lose our jobs, as we should, but let's say we're willing to lay ourselves on that pyre for you, wouldn't they then just cite the defense site ineffective assistance of defense counsel for failure to raise it earlier? And wouldn't a panel have to say, that is ineffective. Now, if he had this out, he could have prevented his client from getting death by filing a simple piece of paper saying, I don't know, 257 days is 137 days longer than 120 days. Wouldn't a panel have to say, you know, you win? No, I don't think panel would have to say that at all. And I don't know that it would necessarily be ineffective, because it could be a strategic decision, Judge. To not get death? Judge, if you look at this record, you'll see that there were a dozen death penalty motions filed in July of 2006. And when they were denied, it was then, and only then, after a four-year delay, that they moved to strike the state's notice and preclude the death penalty. I don't know what was going on in defense counsel's mind, but there is always the possibility of a strategic decision. I think it's a useless act. Frankly, from reading the ruling, I think it might be a useless act. But to say it's laches, well, nope. I think we've covered laches and clean hands. The forfeiture doctrine is also mentioned in our brief. It doesn't require showing a prejudice. But it's all the same concept, that you can't sleep on your rights for four years. We agree. Thank you very much. Okay. We urge you to affirm the sentence entered in the court below. Thank you. Counsel. I knew you know what the devil are, Mr. Becker. Thank you for the argument. We will take the case under advisement. Thank you.